Filed 9/24/25  T.S. v. Superior Court CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| T.S.,<br><br>    Petitioner,<br><br>    v.<br><br>THE SUPERIOR COURT OF SAN DIEGO COUNTY,<br><br>    Respondent,<br><br>SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>    Real Party in Interest. | D085766<br><br><br>(San Diego County Super. Ct. No. EJ4227A-C) |
| In re T.S.<br><br>on<br><br>Habeas Corpus. | D086386<br><br>(San Diego County Super. Ct. No. EJ4227A-C) |

CONSOLIDATED ORIGINAL PROCEEDINGS; writ petition to review order setting a Welfare and Institutions Code section 366.26[1] hearing. Consolidated with a petition for writ of habeas corpus. Alexander M. Calero, Judge. Relief granted, petition for extraordinary relief dismissed as moot.

Law Office of Berta Zangari, Dominika Campbell and Thomas Kisiel for Petitioner.

No appearance for Respondent.

David J. Smith, Acting County Counsel, Lisa M. Maldonado, Chief Deputy County Counsel, and Indra N. Bennett, Deputy County Counsel, for Real Party in Interest.

T.S. (Mother) petitions for extraordinary relief from a juvenile court order made at the 12-month review hearing, which terminated her reunification services and scheduled a permanency planning hearing under section 366.26. (Cal. Rules of Court, rule 8.452.) She contends the juvenile court erred: (1) by conducting hearings without notice to, presence of, or participation by her guardian ad litem (GAL); and (2) in finding the San Diego County Health and Human Services Agency (Agency) proved by clear and convincing evidence that it provided her with reasonable reunification services. Mother also filed a petition for writ of habeas corpus, asserting that to the extent she forfeited any of her claims, such

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

forfeiture was the result of ineffective assistance of counsel.[2]  For the reasons explained below, we grant the petition for habeas corpus relief and dismiss the petition for extraordinary relief as moot.

FACTUAL AND PROCEDURAL BACKGROUND

Mother and her husband, R.S. (Father), have three daughters: 15-year-old I.S., 14-year-old Z.S., and 11-year-old K.S. (collectively, the children).  In October 2023, the Agency filed petitions under section 300, alleging that Mother's mental illness rendered her unable to provide regular care for the children.  A neighbor reported that Mother threw all the children's items outside, got rid of all electronics because the government was watching through electronics, broke all windows, and flooded her apartment with bleach, motor oil, and water.  The children were afraid of staying at the home and reported that Mother was not taking her medication.  At the time, Father was incarcerated.  The children were placed at Polinsky Children's Center and Mother was hospitalized under a section 5150 hold.

At the initial jurisdictional and dispositional hearing on October 30, 2023—Mother's first court appearance—the juvenile court appointed counsel to represent her.  The court also conducted a GAL inquiry, and Mother agreed to the appointment of a GAL.  The court ordered Mother to identify a family member or friend who could serve in that role.  In November 2023, the maternal great-aunt, R.J., who resides in Michigan, agreed to participate in the case and collaborate with Mother and her counsel as a GAL.

---

[2]     We issued an order to show cause in the habeas corpus proceeding. We consolidated Mother's petition for writ of habeas corpus in case No. D086386 with her petition for extraordinary relief in case No. D085766.  We address both matters in this opinion.

3

At the contested jurisdictional and dispositional hearing in January 2024, Mother's counsel identified R.J.—who appeared by phone—as Mother's GAL.  After considering testimony from the social worker and Mother, the juvenile court sustained the petitions, removed the children from both parents' custody, and ordered reunification services for Mother.  By July 2024, Mother's mental health had stabilized and she complied with treatment.  But by the end of October 2024, Mother's mental health regressed, and her discontinuation of antipsychotic medication in December led to further deterioration and a return to supervised visitation.

Between February 2024 and March 2025, the juvenile court held eight hearings without providing notice to or obtaining the appearance of Mother's GAL.  At the contested 12-month review hearing on March 18, 2025, Mother's counsel requested a continuance, explaining that Mother was incoherent and not capable of assisting counsel.  A deputy contacted Mother by phone; she stated she did not want to attend court that day.  The court denied the continuance.

Following testimony from the social worker and closing argument, the court found the Agency had provided reasonable services.  It acknowledged that Mother's housing difficulties were, in part, caused by her mental health-related conduct and granted the Agency's section 388 petition to terminate funding for her housing.  The court reverted her visits to supervised, terminated reunification services for both parents, and set a section 366.26 hearing.

## DISCUSSION

Parties who are represented by counsel at dependency proceedings "shall be entitled to competent counsel."  (§ 317.5.)  A parent who establishes ineffective assistance of counsel in such proceedings is entitled

4

to relief for the denial of the statutory right to competent representation. (*In re A.R.* (2021) 11 Cal.5th 234, 247.)  To state a prima facie claim, the parent must show:  (1) counsel's performance fell below the standard expected of a reasonably competent practitioner in dependency law, and (2) it is reasonably likely the outcome would have been more favorable absent counsel's errors.  (*Id.* at pp. 251–252.)  The record here demonstrates both.  Mother's appointed counsel failed to provide the competent and diligent advocacy required, and there is a reasonable likelihood of a more favorable outcome had counsel fulfilled those obligations.

In dependency proceedings, a parent found mentally incompetent must participate through a court-appointed GAL.  (Code Civ. Proc., § 372; *In re James F.* (2008) 42 Cal.4th 901, 910.)  The key inquiry in dependency proceedings is whether the parent has sufficient understanding of the case to assist counsel in protecting the parent's interests in the child's companionship, custody, control, and maintenance.  (*In re Sara D.* (2001) 87 Cal.App.4th 661, 667.)  Once appointed, the GAL assumes control over litigation strategy and the procedural steps necessary to advance the parent's case.  (*Id.* at p. 668.)

In late October 2023, county counsel requested a GAL inquiry as to Mother, who appeared with counsel.  After inquiry, Mother agreed to the appointment of a GAL and identified R.J. as a possible candidate.  The court directed Mother to provide her attorney with R.J.'s contact information so counsel could determine whether she could serve.

Despite the GAL's consistent availability and biweekly contact with Mother, Mother's trial counsel failed to involve the GAL in the proceedings. When the contested jurisdiction and disposition hearing was held in

5

January 2024, the GAL appeared telephonically but was told by Mother's counsel that she could only listen; she was never advised of her role. Thereafter, the GAL received no notice of hearings or communication from the court, effectively excluding her from the case. R.J. confirms that had she been unable to fulfill her duties, she would have asked the court to appoint a replacement.[3]

Mother's trial counsel admits that between January 11, 2024, and March 18, 2025, he never attempted to contact the GAL or verify whether she received notice. Nor did he ever object to hearings proceeding without her. His supervisor confirms that counsel was trained on the standards requiring notice to, and participation of, a GAL, and that office policy requires counsel to flag GAL appointments and confer with the GAL before each hearing regarding the progress of the case and legal options. But this was never done. The record thus supports the conclusion that Mother's attorney failed to perform as a reasonably competent and conscientious advocate, a point the Agency does not contest.

The prejudice is clear. At the 12-month review hearing, the court terminated reunification services and set a section 366.26 hearing, relying in part on its finding that Mother had not made substantial progress in services due to her refusal to take antipsychotic medication and her discharge from therapy for declining mental health. At the outset of the hearing, counsel advised the court that Mother was "having trouble collecting her thoughts and speaking in a coherent manner" and was unable to assist him, even telephonically. He requested a short

---

[3]    The reporter's transcripts contain no reference to the GAL. The clerk's transcript documents only one Agency contact with the GAL—on November 1, 2023, to explore placement of the children with her.

continuance, which the court denied. The GAL, however, was not notified of this hearing and was thus unable to participate on Mother's behalf.

A parent's right to the companionship, care, custody, and upbringing of their children is among the most fundamental of civil liberties. Before the state may interfere, the parent must receive notice, a hearing, and a meaningful opportunity to be heard. (*In re B.G.* (1974) 11 Cal.3d 679, 688–689.) Here, although direction of the case was vested in the GAL, she received no notice of hearings after January 2024 and was given no opportunity to be heard. The record suggests neither the Agency nor Mother's counsel had contact with her thereafter.

The record shows Mother's mental health fluctuated. In April 2024, her condition severely impaired communication, and the children declined visits. By July 2024, however, she stabilized, complied with treatment, and was commended—even by county counsel—for her cooperation. Yet by late October, her condition deteriorated once again. Reports of noncompliance with medication led to a return to supervised visitation in December 2024, with her therapist noting that she had regressed to her initial state—unhappy, resistant, and combative. The social worker likewise reported that Mother was refusing her antipsychotic medication.

Although the record does not disclose what the GAL knew, her biweekly contact with Mother suggests she might have provided valuable insight into why Mother discontinued her medication and whether she was open to resuming medication and fully engaging in therapy. Counsel's decision not to involve the GAL foreclosed a likely source of relevant information about Mother's relapse.

The Agency contends any prejudice is speculative given Mother's resistance to treatment and medication and that the setting of the

7

section 366.26 hearing was "inevitable." But that argument underscores the problem. Because the GAL was excluded from the proceedings, any evaluation of what she did—or could have done—is necessarily speculative. We do not know what took place during the GAL's biweekly conversations with Mother, nor what might have occurred had the GAL been kept informed of hearings and provided regular updates from defense counsel.

Had the GAL—an individual Mother knew and trusted—been included, she could have emphasized to Mother the importance of taking her medication and participating in reunification services. She also could have facilitated communication between Mother and the court, advocated for needed mental-health interventions, and coordinated with service providers to promote stability. Such involvement would have strengthened Mother's ability to engage in the process and work toward reunification with her children.

On this record, the exclusion of the GAL cannot be deemed harmless beyond a reasonable doubt. By sidelining the GAL, the court was deprived of a fuller, more accurate understanding of Mother's condition and needs. The cumulative effect was to deny Mother meaningful representation.

We therefore conclude Mother's appointed counsel rendered ineffective assistance. The matter is remanded to the juvenile court with directions to (1) vacate the order terminating reunification services and setting the section 366.26 hearing and (2) appoint new counsel for Mother. Because we have granted the relief requested, we dismiss Mother's petition for extraordinary relief as moot.[4] (*In re S.O.* (2002) 102 Cal.App.4th 1402, 1412.)

---

[4] Mother seeks judicial notice of: (1) an excerpt from the Child and Family Well-Being Department's policy; (2) a Judicial Council of California

8

DISPOSITION

Let a writ of habeas corpus issue directing the juvenile court to (1) vacate the order terminating reunification services and setting the section 366.26 hearing and (2) appoint new counsel for Mother. The petition for extraordinary writ is dismissed as moot. We direct the clerk of this court to forward a copy of this opinion to the State Bar of California and notify Mother's appointed counsel in the juvenile court proceedings. (See Bus. & Prof. Code, § 6086.7, subds. (a)(2) & (b).) This opinion is final as to this court within 10 days of filing. (Cal. Rules of Court, rule 8.387(b)(3).) Within 10 days of the issuance of the remittitur, the trial court is directed to schedule a hearing to appoint new counsel for Mother.

IRION, J.

WE CONCUR:

McCONNELL, P. J.

O'ROURKE, J.

---

publication; and (3) a publication from the American Bar Association. She asserts the documents are relevant to her petition for extraordinary writ. Because we dismissed Mother's petition for extraordinary relief as moot, we deny her request for judicial notice.

9